UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| **Leroy Kenneth Smalls, #211241,** ) | CIVIL ACTION NO. 9:11-0732-JMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| **Bill Byars, Director; Jon Ozmint, Former** ) | |
| **Director; Robert Ward, Division** ) | |
| **Director**; **Anthony Padula, Warden;** ) | |
| **Bernard McKie, Warden; Lloyd Greer,** ) | |
| **Investigator; Vaughn Jackson, Mayor;** ) | |
| **Mark Creech, Sled Agent; Christine** ) | |
| **Ganey, Sled Agent; in their individual** ) | |
| **and official capacities**. ) | |
| ) | |
| Defendants. ) | |
| ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on October 13, 2011.[1] As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 31, 2011, advising Plaintiff of the importance of a motion for

---

[1]Restored with leave to supplement. See Order filed October 13, 2011 (Court Docket No. 51). No supplemental material was filed.



1

summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to November 9, 2011, together with a "Declaration".

The Defendants' motion is now before the court for disposition.[2]

## Background and Evidence

Plaintiff, a frequent filer of pro se litigation in this Court, alleges in his verified complaint[3] that on January 8, 2009, he was seized and taken out of the Lee Correctional Institution (LCI) general prison population and placed in the LCI Special Management Unit (SMU) pending an investigation into the January 4, 2009 stabbing death of another inmate at LCI. Plaintiff alleges that he was thereafter transferred without notice on January 9, 2009 to the Kirkland Correctional Institution (KCI) Maximum Security Unit (MSU) pending the investigation. Plaintiff remains incarcerated at KCI. Plaintiff alleges that when he arrived in the KCI MSU he was confined in a "control cell", stripped of all clothing along with all property, and provided with only a suicide blanket for approximately five days. Plaintiff generally complains about the conditions in this control cell, including twenty-four hour lighting and "freezing" room temperature.

Plaintiff alleges that on January 12, 2009 he was advised by case manager Yvonne

---

[2] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



Lofton that he had a review hearing scheduled for January 15, 2009. Thereafter, on January 14, 2009, he was provided with a mattress, clothing and some toiletries. Plaintiff alleges that he was advised by the Defendant Vaughan Jackson, the "Supermax" supervisor, that pending the investigation Plaintiff was not allowed legal/personal incoming/outgoing mail or telephone privileges, nor was he allowed access to "institutional forms" such as grievances and request to staff members or any type of reading/writing materials or recreation. At the review hearing on January 15, 2009, Plaintiff was advised that his transfer to Supermax had been directed by the Defendant Robert Ward, Division Director of Operations, and that the investigation into the stabbing was ongoing.

Plaintiff alleges that while did not have access to prison procedures himself, he did have a fellow inmate write a request to staff member for him on February 23, 2009 to Associate Warden Aaron Joyner concerning his situation. <u>See</u> Exhibit 8 to <u>Plaintiff's Complaint</u>. Plaintiff alleges that on March 9, 2009, he was advised by Jackson that the investigation had been completed, and that he would soon be transferring to another prison. Plaintiff was moved out of the control cell to a more private cell, and his recreation, personal/legal incoming/outgoing mail correspondence were reinstated. Plaintiff alleges, however, that he was subsequently advised on March 16, 2009 by investigator Lloyd Greer that the investigation had not been completed. Plaintiff alleges that he later learned that the investigation was being conducted through the South Carolina Law Enforcement Division (SLED). Plaintiff alleges that the Supermax Case Management Committee Board finally recommended his release from Supermax on July 8, 2010, but was subsequently informed by Lofton that it had been determined that the Review Board could not give him a recommendation because he was only in Supermax for investigative reasons. Plaintiff alleges that he was interviewed on October 12, 2010 by the Defendants Greer, Creech and Ganey concerning the stabbing investigation, and goes



on to discuss matters relating to this criminal investigation.

Plaintiff alleges in his Complaint that his continued confinement in the Supermax violates "his due process rights as they relate to administrative segregation placement, particularly in restricted housing units such as SCDC's Supermax." Specifically, Plaintiff alleges that he has been denied the right to sufficient notice of any charges against him and the opportunity to rebut these charges. Plaintiff further alleges that he is entitled to a periodic review to consider if there is a need for his continued confinement, which he [Plaintiff] should have the right to attend and contest. As such, Plaintiff contends that any prison policies which have kept him confined in Supermax do not comply with the mandates of due process. Plaintiff also complains that the "notation in his prison file that he has been placed in such punitive confinement may have [a] seriously adverse affect on his eligibility for parole."

Plaintiff also complains that while he had been kept in Supermax he has been deprived of his First Amendment rights such as access to reading materials, access to incoming/outgoing mail, right to telephone access, and right to freedom of exercise. Plaintiff also complains about improper restrictions on his grievance rights. Plaintiff seeks monetary damages, as well as well certain injunctive and/or declaratory relief to include release into the general prison population. See generally, Plaintiff's Verified Complaint, with attached exhibits.[4]

In support of summary judgment in the case, the Defendants have submitted an affidavit from the Defendant Lloyd Greer, who attests that he is an investigator at the Lee Correctional Institution and is responsible for investigating crimes that involve inmates incarcerated

---

[4]Many of Plaintiff's exhibits relate to the ongoing criminal investigation, and are therefore not relevant to his conditions of confinement claim. The remainder of Plaintiff's exhibits include various prison documents, including copies of the notice of his review hearing, various requests to staff member forms and correspondence, and copies of various prison policies and regulations.



4

at LCI. Greer attests that Plaintiff is the chief suspect in a murder investigation as a result of the stabbing death of Inmate Lemmont Lee Jones on or about January 4, 2009 while both inmates were incarcerated at LCI. Greer attests that Jones was accused of sexually assaulting the daughter of Plaintiff's former wife. Greer attests that Plaintiff was removed from the general prison population following the stabbing in accordance with SCDC Policy OP-22.11 (2006), a copy of which is attached to Greer's affidavit as Exhibit A.

Greer attests that the MSU consists of specialized housing for inmates who have demonstrated an unwillingness to conform to the rules and regulations of an SMU (Special Management Unit), or who have been charged with violent criminal behavior while in the general population. See also, attached to Exhibit A ["Purpose"]. Greer attests that he is currently working with SLED on the continued investigation of Plaintiff relating to this murder in his capacity as an investigator for SCDC. Greer attests that Plaintiff is already serving a life sentence for murder following an incident that occurred on or about October 8, 1992, and that Plaintiff is being properly housed in the MSU pending investigation of the murder, both in accordance with the policies and provisions of Policy OP-22.11, as well as the safety and well being of the Plaintiff and the general population of the institution. See generally, Greer Affidavit, with attached exhibits.

The Defendants have also submitted an affidavit from the Defendant Kristina Gainey (misspelled in the caption of the Complaint as "Christine Ganey"), who attests that she is an agent for SLED charged with the investigation of crimes occurring throughout the State of South Carolina. Gainey attests that Plaintiff is the chief suspect in the murder of Inmate Lammont Lee Jones on or about January 4, 2009, who had been accused of sexually assaulting the daughter of Plaintiff's former wife. Gainey attests that she was called to LCI on January 4, 2009 due to an inmate stabbing. Gainey



attests that the victim was reported to have been stabbed in the day room within the Darlington Unit at LCI at 11:30 a.m. LCI was immediately placed on lock down while contraband teams searched for evidence related to the stabbing, and several witnesses identified Plaintiff as the chief suspect in the investigation. Gainey attests that Plaintiff was seen running from the day room where Jones was stabbed, and that the contraband team has recovered several "shanks" and other related evidence that require further DNC testing. Gainey attests that SLED continues to analyze the evidence recovered by the contraband team at LCI as part of their investigation, and that at all times relevant to this action she was acting within the course and scope of her employment as a SLED agent. See generally, Gainey Affidavit.

As part of his attachment to his memorandum in opposition to summary judgment, Plaintiff has attached a "Declaration" wherein Plaintiff reiterates his original allegations about the conditions under which he was confined when he was initially placed in the Supermax on January 9, 2002, and states that he is "still being deprived of out-of-cell, or indoor-cell recreation . . . ." Plaintiff complains that his recreation consists of going to the "recreation single cage gate [while] in restraints [consisting] of leg irons, security cuffs, belly chains with black box on a leader chain, which do not come off the entire (1) hours recreation, making exercise impossible." Plaintiff further complains that indoor cell exercise is "impossible because I have no room to move around . . . ." See generally, Plaintiff's Declaration dated November 4, 2011.

Plaintiff has also submitted some affidavits from third parties attesting to various matters which do not concern Plaintiff's conditions of confinement, other than the fact that he is in lockup; see Wright and Hammock Declarations; and declarations from two other inmates, Jahson Wallace and Sammie Adams, attesting to the conditions under which they are/were confined while



6

incarcerated in the KCI MSU. See Wallace and Adams Declaration. Plaintiff has also submitted copies of the Gainey and Greer affidavits, a report on the use of force dated January 8, 2009 indicating that on that date Lieutenant Robert Durant applied handcuffs to the Plaintiff in the Darlington Unit to be escorted to the MSU to be placed on lockup status, and a copy of SCDC policy/procedure No. 03-22.12.

Plaintiff has also provided a copy of a memorandum to him from Investigator Greer dated March 22, 2009 advising Plaintiff that he was incarcerated at KCI because of an ongoing investigation into the death of Inmate Lammont Jones at LCI on January 4, 2009. This memorandum also states: "Your correspondence with your family was delayed at first for investigative reason[s] but has since been restored as far as incoming and outgoing mail. As for telecommunication, I do not know what the policy is concerning Super-max. As to any personal property being with held [,] it will be returned to you on completion of this investigation." Greer Memorandum. Plaintiff has also provided a copy of an SCDC Health Services Medical Summary showing that Plaintiff had no medical concerns upon placement into the KCI Supermax on January 9, 2009, with additional notations for January 15, 2009 indicating that Plaintiff had no medical concerns; did not have any problems with mood, sleep or appetite; and that Plaintiff "had no concerns or questions". Plaintiff's exhibits also include medical summaries for various dates in 2010, all of which are essentially unremarkable, with Plaintiff even being described on several occasions as being "joyful" and experiencing no problems. The only exception to this general rule involves Plaintiff being advised about the death of his common law wife in September 2010, following which he was placed on "crisis" in or around September 16, 2010; and another health clinic visit on December 21, 2010 where Plaintiff indicated he was "stressed out" over his wife's death, and complained about his



7

incarceration in the Supermax due to the ongoing investigation. Finally, Plaintiff has attached copies of MSU Case Management Board dispositions dated July 8, 2010 and October 5, 2011, both of which note that although Plaintiff had been recommended for release from MSU, he would remain in "Level Three" until further notice. See generally, Plaintiff's Exhibits.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

Plaintiff alleges his constitutional rights have been violated because of his continued incarceration in the KCI MSU and because of his conditions of confinement in that facility (and,



previously, in the LCI MSU). However, with respect to his placement in the MSU itself, Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].

Therefore, in order to state a § 1983 claim based on his placement in the MSU alone, Plaintiff would have to present evidence sufficient to show that the Defendants' decision in his case was arbitrary, capricious, or based on some other unlawful motive. See generally, Sandin v. Connor, 515 U.S. 472, 478 (1995); Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976), cert. denied, 429 U.S. 846 (1976)[classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion]; Crowe v. Leeke, 259 S.E.2d 614, 615 (1979). Plaintiff has presented no such evidence. To the contrary, the evidence before the Court (including Plaintiff's own exhibits) confirm that the reason he is in the MSU is because he is the subject of a criminal investigation involving the murder of another inmate. While Plaintiff may not agree with this investigation, believe he should be the subject of the investigation, or that the investigation should be taking this long and still be ongoing, Plaintiff's own opinions do not in and of themselves constitute evidence



that his continued incarceration in the MSU is arbitrary, capricious, or based on some other unlawful motive. See generally Sweet v. South Carolina Department of Corrections, 529 F.2d 854, 859 (4th Cir. 1975) (en banc) [describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation]; Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997) [Inmate's confinement in Administrative Segregation does not impose such an atypical hardship so as to implicate a liberty interest]; Jordan v. Federal Bureau of Prisons, 191 Fed. Appx. 639, 652-653 (10th Cir. 2006)[Inmate's placement in administrative detention for almost five years did not implicate a liberty interest protected by due process, because it resulted from an ongoing investigation of murder within the prison, of which inmate was a suspect, and officials were aware of his violent history]; Jones v. Walker, 358 Fed. Appx. 708, 712 (7th Cir. 2009)[Inmates do not have a liberty interest in avoiding placement in discretionary segregation, meaning "segregation" imposed for administrative, protective, or investigative purposes]; see also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["even though pro se litigants are held to less stringent pleading standards than attorneys, the Court is not required to 'accept as true legal conclusions or unwarranted factual inferences'"].

Further, to the extent Plaintiff complains that his continued incarceration in the MSU has somehow violated an SCDC policy or procedure, even assuming for purposes of summary judgment that some policy or procedure has not been properly followed (which the undersigned has not found), the violation of a prison rule or policy by prison officials does not by itself constitute a violation of the constitution, or a prisoner's constitutional rights. Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); see also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5



n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469). Therefore, even if a policy of the prison has not been complied with, that does not mean, ipso facto, that a violation of Plaintiff's constitutional rights occurred. Sandin, 515 U.S. at 478 [the "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"]. Rather, Plaintiff must show that his incarceration is itself a constitutional violation. Plaintiff has presented no evidence sufficient to give rise to a genuine issue of fact as to whether his continued incarceration in the MSU under the facts and circumstances alleged is arbitrary or capricious or amounts to a violation of his constitutional rights. Beverati, 120 F.3d at 500; Jordan, 191 Fed. Appx. at 652-653.

With respect to the *conditions* of Plaintiff's confinement, again there is no evidence before the Court sufficient to give rise to a genuine issue of fact as to whether a constitutional violation has occurred. First, Plaintiff complains that upon his initial incarceration he was placed in a stripped out Supermax cell for a short period of time with only minimal accessories and no access to mail or visitors. No constitutional violation has been shown in this evidence, even assuming Plaintiff's description of the conditions of his confinement to be true for purposes of summary judgment. Cf. Estrada v. Kruse, 38 Fed. Appx. 498-499 (10th Cir. 2002)[No Eighth Amendment violation where Plaintiff was placed in stripped basement cell for 5 days where he suffered no injury and he did not show Plaintiffs had evil motives or intent]; Kidwell v. Buchanan, No. 93-15056, 1993



WL 230224 at **1 (9th Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment]; Grissom v. Davis, 55 Fed.Appx. 756, 757-758 (6th Cir. 2003) [No violation where Plaintiff endured seven day mattress restriction but suffered no more than a de minimis physical injury]; see also Schroeder v. Kaplan, No. 93-17123, 1995 WL 398878, * 2 (9th Cir. July 7, 1995)[No mattress for approximately one month held not to be unconstitutional]; Chavarria v. Stacks, 102 Fed.Appx. 433, 436-437 (5th Cir. July 20, 2004)[policy of constant illumination was reasonably related to the legitimate penological interest of guard security and enforcement of the policy did not violate the Eighth Amendment]; Murray v. Edward's County Sheriff's Department, 248 Fed.Appx. 993, 998-999 (10th Cir. Oct. 1, 2007)[upholding summary judgment for Defendant jail officials on grounds that detainee had failed to establish that his sleep problems from continuous cell illumination were sufficiently severe to trigger the Eighth Amendment], cert. denied, 553 U.S. 1035 (2008); cf. Bazzetta v. McGinnis, 430 F.3d 795, 802-05 (6th Cir. 2005)[regulation banning virtually all visitation for inmates found guilty of two or more violations of major misconduct charge of substance abuse was not a dramatic departure of a typical and significant hardship in relation to ordinary incidents of prison life necessary to implicate a state-created liberty interest, and thus did not rise to level of egregious conduct necessary to violate the guarantees of Fourteenth Amendment's procedural due process clause]; Tarney v. Boles, 400 F. Supp.2d 1027, 1040 (E.D. Mich. 2005)[inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process]; Papadakis v. Director, No. 08-670, 2010 WL 1753358 at * 2 (E.D.Tex. Apr. 8, 2010)["[B]eing placed in disciplinary confinement, losing commissary and property privileges for


thirty days, and remaining at the same time earning class are not sanctions which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."] (quoting Sandin, 515 U.S. 472).

Plaintiff's continued incarceration in the MSU is also not unconstitutional, nor do any of the conditions of Plaintiff's complaint as he describes in his Complaint rise to the level of a constitutional violation. In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); Overton v. Bazzetta, 539 U.S. 126, 132 (2003) ["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"]; see also Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Weens v Lawrence, No. 09-65, 2009 WL 2422795 at --- 2-3 (S.D.Ga. Aug, 6, 2009)[shackling pre-trial detainee during exercise did not violate Fourteenth Amendment]; Ruffino v. Lawrence, No. 08-1521, 2010 WL 908993 at * 5 (D.Conn. Mar. 9, 2010)[citing numerous cases upholding inmates being required to wear restraints during exercise and finding no contrary decisions]; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eight Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the



challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]; Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at — 5-6 (7th Cir. Apr. 6, 1995)["Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity."]; Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988)[prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted]; Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris, 839 F.2d at 1235); Isaac v. Fairman, No. 92-3875, 1994 WL 63219, * 5-6 (N.D.Ill. 1994) [allegation that prisoner was provided only one uniform and denied adequate opportunity to wash did not state claim]; Farmer v. Brennen, 511 U.S. 825, 834-835 (1994) [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) [Prison officials have legitimate penological interests in Administrative Segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"], reh'd denied, 75 F.3d 448 (9th Cir. 1995), cert. denied, County of Kern v. Anderson, 116 S.Ct. 306 (1995).

Further, Plaintiff has presented no evidence to show that he has suffered any harm during his period of incarceration which would entitle him to monetary damages. Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does].



For example, there is no medical evidence that Plaintiff's health deteriorated due to a lack of exercise and Plaintiff has failed to specify how his health deteriorated. Indeed, Plaintiff's own evidence reflects that not only has he not suffered any harm as a result of his incarceration, he has received regular medical reviews and attention. Eady v. Sawyer, No. 02-1225, 2005 WL 2206249, at *5 (S.D.Ill. Sept. 12, 2005) [case dismissed where, although Plaintiff may have experienced some discomfort, he made no viable claim of physical harm suffered due to temporary lack of mattress or pillow]; Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights, as detainee failed to allege remedial injury]. This lack of evidence of a constitutionally compensable injury is fatal to Plaintiff's claim for monetary damages. Holley, 2010 WL 2640328 at * * 9-15 [noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; Shakka, 71 F3d at 166 [prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions of confinement].

By reaching the conclusion that no compensable constitutional violation has been shown in the evidence, the undersigned does not intend to signal a lack of concern over Plaintiff's complaint about his continued incarceration in the MSU pending the conclusion of the investigation into the murder of Inmate Jones. However, while Plaintiff may have some state law claim or administrative process he could pursue, absent some evidence of a significant injury suffered by the Plaintiff as a result of conditions deemed to be unconstitutional, or other accompanying factors not present in this case, the undersigned does not find that Plaintiff has presented a genuine issue of fact



as to whether his constitutional rights have been violated sufficient to survive summary judgment. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted,** and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 29, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

